UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLI K. OLSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 2:16-cv-01987-CKD<br><br><br>ORDER |

Plaintiff Alli K. Olson seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 12.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 20.) Thereafter, plaintiff filed a reply brief. (ECF No. 21.)

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on February 12, 1978 and has completed two years of college.[2] (Administrative Transcript ("AT") 223, 245.) On January 25, 2013, plaintiff applied for DIB and SSI, alleging that her disability began on October 1, 2008. (AT 218–30.) Plaintiff claimed that she was disabled due to posttraumatic stress disorder ("PTSD"), severe depression, premenstrual dysphoric disorder, anxiety, and attention deficit hyperactivity disorder ("ADHD"). (AT 244.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on October 30, 2014. (AT 35–64.) The ALJ subsequently issued a decision dated February 13, 2015, determining that plaintiff had not been under a disability as defined in the Act, at any time from October 1, 2008 through the date of the decision. (AT 14–30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 22, 2016. (AT 1–3.) Plaintiff subsequently filed this action on August 19, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUE PRESENTED

On appeal, plaintiff raises the issue of whether the ALJ improperly weighed the medical opinion evidence.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV.  DISCUSSION

   A.  Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] Preliminarily, the ALJ determined that plaintiff met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

   Step three: Does the claimant's impairment or combination of impairments meet or

3

insured status of the Act through March 31, 2011. (AT 16.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date. (AT 17.) At step two, the ALJ found that plaintiff has "the following severe impairments: posttraumatic stress disorder, panic disorder, general anxiety disorder, major depressive disorder, attention deficit hyperactivity disorder, bipolar affective disorder, and alcohol dependency." (Id.)

At step three, the ALJ concluded that plaintiff's "impairments, including the substance use disorders, meet sections 12.04, 12.06, and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1." (AT 18.) The ALJ further determined that plaintiff would "continue to have a severe impairment or combination of impairments," at step two, even if plaintiff ceased her substance use. (AT 23.) At the same time, however, the ALJ concluded that if plaintiff "stopped the substance use and/or maladaptive use of prescription medication, [she] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1," at step three. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that if plaintiff "stopped the substance use and/or maladaptive use or prescription medication, she would have the [RFC] to perform work at all exertional levels except she could perform unskilled work (i.e. simple, repetitive tasks)." (AT 24.) At step four, the ALJ determined that if plaintiff "stopped the substance use and/or maladaptive use or prescription medication, [she] would be unable to perform past relevant work." (AT 27.) However, at step five, the ALJ found that if the plaintiff

---

> equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

"stopped the substance use and/or maladaptive use of prescription medication, considering [her] age, education, work experience, and [RFC], there would be a significant number of jobs in the national economy that the claimant could perform." (AT 28.) Therefore, the ALJ concluded that

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(AT 29.)

### B. Plaintiff's Substantive Challenge to the Commissioner's Determinations

The sole issue raised by plaintiff is whether the ALJ improperly weighed the medical opinion evidence. (See ECF No. 12.) Specifically, the plaintiff argues that the ALJ erred when she rejected the opinions of Dr. Swanson, Ms. Wilson, and Mr. Nascimento, and when she accepted the opinions of Drs. Garland and Colsky. (See Id. at 7–12.)

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ

may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, before addressing the various medical opinions in the record, the ALJ thoroughly documented the evidence in the record of plaintiff's "maladaptive use of alcohol and/or prescription medication." (AT 19–22.) Plaintiff does not challenge these findings, which are nonetheless supported by substantial evidence in the record. (See AT 299, 362–63, 387, 409, 434, 437–39, 442, 455, 489, 521, 555, 560–61, 589, 610–12, 617–18, 629, 727–28, 738, 743–45, 747, 762, 768, 774.) For example, on March 3, 2009, plaintiff admitted to having a problem with drugs and alcohol (AT 485, 489); progress notes, on December 15, 2009, documented that plaintiff was "possibly abusing benzodiazepines" (AT 561); and, as late as August 5, 2014, it was noted that plaintiff "hasn't been med complaint." (AT 744.) Moreover, as the ALJ pointed out, the record contains multiple pharmacy alerts and Controlled Substance Utilization, Review and Evaluation System ("CURES") reports that caused concern among plaintiff's various providers, because they demonstrated that plaintiff was violating her pain management contracts and receiving narcotic medications from multiple providers. (See AT 387, 438, 442, 560, 743–45, 762, 768.)

The ALJ also summarized and analyzed plaintiff's medical record in detail. (See AT 24–26.) Significantly, the ALJ concluded that "the record clearly shows that when the claimant is clean and sober, she is stable" (AT 24) and "[t]his is a clear case in which the claimant's

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

6

substance abuse disorder is 'material' to a finding of disability." (AT 25.) The ALJ reasoned that

> [A] review of primary care records that otherwise make no mention of any sobriety or medication compliance issues reveals that the claimant was psychologically "stable." [AT 294, 302, 305, 327, 344.] The claimant repeatedly denied high stress, feelings of being overwhelmed, depressed mood, and crying spells [AT 294, 327, 329, 656] and she in fact reported that she was otherwise doing well [AT 327]. On April 16, 2009, the claimant reported that her depression "is gone" and that her anxiety was well controlled. [AT 572.] On November 15, 2012, the claimant reported that her ADHD symptoms were stable. [AT 343.] Indeed, when progress notes have made no mention of any sobriety or medication compliance issues, the claimant has repeatedly presented with few significant mental status examination findings. [AT 319, 323, 325, 343.]
>
> Mental health records also show that the claimant's condition has been well controlled. As early as February 2009, the claimant has been clinically recognized as "stable" on numerous occasions when she is medication compliant. [AT 546, 549, 552, 558, 573, 577, 579.] On June 3, 2010, the claimant has reported that her "medication manages her symptoms fairly well." [AT 614.] In November and December 2010, the claimant reported that she was caring for her infant, she was "stable", and her medications were working well. [AT 548, 552.] On April 28, 2011, the claimant reported that she was able to control and handle her anxiety. [AT 542.] The claimant reported that her panic attacks were only "occasional." [AT 465.]
>
> On August 2, 2012, the claimant reported that her depression was "manageable." [AT 453.] . . .
>
> By January 3, 2013, the claimant reported that she "feels much better, more stable emotionally." [AT 432.] After the claimant completed her time at a residential drug and alcohol treatment facility in September 2013, she reported that she was "doing well and [did] not have any immediate case management needs." [AT 711.] By May 22, 2014, the claimant reported that her mood was "more stable" and that she experienced "far fewer manic episodes." Even so, the claimant reported that she was able to control her behaviors. [AT 750.]

(AT 25.) The ALJ's reasoning is supported by substantial evidence in the record, which she accurately summarized. [See AT 294, 302, 305, 319, 323, 325, 327, 329, 343–44, 432, 453, 465, 542, 546, 548–49, 552, 558, 572–73, 577, 579, 614, 656, 711, 750.]

Therefore, to the extent that the evidence may be susceptible to more than one rational interpretation, the court upholds the ALJ's well-supported conclusions, regarding the effect of plaintiff's substance abuse on her impairments. See Tommasetti, 533 F.3d at 1038. Moreover, as

7

explained below, the ALJ provided several specific and legitimate reasons, based upon her well-supported analysis of plaintiff's medical record, for discounting the opinions of Dr. Swanson, Ms. Wilson, and Mr. Nascimento, and for adopting the opinions of Drs. Garland and Colsky.

   1. *Opinion of Thomas R. Swanson, M.D.*

On October 21, 2014, plaintiff's treating psychiatrist Dr. Swanson wrote a very brief letter regarding plaintiff's impairments that stated:

> This is to verify that Ms. Olson is a patient of ours and that she has Bipolar Disorder that results in her being disabled. She is on medication for the disorder and sees us monthly.
>
> It is estimated that she will be disabled for at least the next three years.

(AT 787.)

The ALJ gave this opinion little weight for several reasons. (See AT 27.) First, the ALJ found that this opinion is "inconsistent with statements from the claimant's various therapists at Shasta County Mental Health that state that the claimant is stable." (AT 27.) This is supported by substantial evidence in the record because, as explained above, plaintiff repeatedly presented as stable when not actively engaged in substance abuse. (See AT 294, 302, 305, 327, 344.)

Second, the ALJ concluded that this opinion is "inconsistent with the claimant's repeated reports that she has responded to care." (AT 27.) This is also supported by evidence in the record that demonstrates plaintiff self-reported that she was able to deal with her anxiety (AT 542, 609); that she felt emotionally stable (AT 432, 750); and that she was doing well (AT 711).

Third, the ALJ pointed out that Dr. Swanson's own opinions are inconsistent with one another. (AT 27.) This conclusion is supported by the record, as well. On January 2, 2014, Dr. Swanson prepared a letter for plaintiff, apparently at her behest, for an upcoming court appearance (see AT 774), in which Dr. Swanson stated:

> This is to verify that Ms. Olson is a patient of ours and that she is being treated and followed for Bipolar Disorder and Attention Deficit Disorder. We are also aware of her past history of having abused alcohol.
>
> She is taking her medication regularly and has been doing well. She keeps her appointments and follows through with

recommendations given to her. We are seeing her on a regular
basis. It is my opinion that she is doing well.

(AT 770.) As such, the record demonstrates that ten months after opining that plaintiff was doing well, Dr. Swanson suddenly determined that plaintiff would be disabled for the next three years, without elaborating as to why or what changed. Further, in his later opinion Dr. Swanson failed to mention plaintiff's ADHD or history of alcohol abuse. Thus, the ALJ reasonably concluded that such unexplained inconsistencies undermine the authority of Dr. Swanson's opinions.

Fourth, the ALJ observed that Dr. Swanson's October 21, 2014 opinion failed to mention plaintiff's substance abuse disorder and drug-seeking behavior, even though Dr. Swanson was well aware of these issues. (AT 27.) The record also supports this observation. In his progress notes from March 20, 2014, Dr. Swanson reported:

> I received a message that Alli is getting Xanax and/or Lorazepam from other providers. I did a CURES report and indeed that is the case. . . . I left a message on her vox re this and that we will monitor CURES from now on.

(AT 762.) Then on August 5, 2014, in another progress note from Dr. Swanson's clinic, Nurse Practitioner Nancy Jacobs observed:

> Client has requested a refill of her Adderall. She has a h/o no shows and non compliance with meds.
>
> Medical records reviewed and CURES report done. Per Dr. Swanson's note 5/22/14, the client denied all Benzo use. Per CURES she has been getting Xanax from another provider since 12/26/13, while also getting a Benzo from SCMH. Last picked up Adderall 6/20/14, which shows she is not taking it as ordered.
>
> The client is using 4 different pharmacies.
>
> Consulted with Dr. Swanson. Will d/c all controlled drugs, place alert in Anasazi.

(AT 743.) This documented drug-seeking behavior is quite troubling. Yet, Dr. Swanson did not acknowledge or explain these issues in his opinion. Moreover, in his first opinion, Dr. Swanson indicated that plaintiff keeps her appointments, which is directly contradicted by her documented history of "no shows."

////

As a result of these numerous inconsistencies, the ALJ concluded that it appears "that Dr. Swanson is acting as an advocate rather [than] stating his opinion based on objective findings." (AT 27.) The court finds that the ALJ's conclusions are reasonable and supported by substantial evidence in the record.

### 2. *Opinions of Sandra A. Wilson, LMFT and Brandon Nascimento, MHRS*

The record also contains opinions from two of plaintiff's other mental health providers, Ms. Wilson and Mr. Nascimento. (AT 422, 453, 461, 470, 607, 614.) Ms. Wilson is a licensed marriage and family therapist, while Mr. Nascimento is a mental health rehabilitation specialist. The Social Security Administration has clarified that such practitioners are classified as non-medical "other-sources." See 20 C.F.R. 404.1513(d) and 416.913(d).

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p (S.S.A. Aug. 9, 2006). In any event, as explained below, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for giving these opinions little weight.

From June 2010 through August 2011, Mr. Nascimento periodically treated plaintiff and opined as to her alleged limitations. (See AT 453, 461, 470, 607, 614.) Specifically, Mr. Nascimento opined that plaintiff's "symptoms impair her ability to maintain employment, maintain relationships and complete daily tasks and interact with others." (AT 607, 614.)

Ms. Wilson provided a letter indicating that plaintiff was referred to her on February 12, 2013, for treatment of chronic posttraumatic stress disorder. (AT 422.) Ms. Wilson indicated that plaintiff's "symptoms include debilitating anxiety, fear and the inability to cope" and opined that plaintiff's "symptoms are causing significant functional impairment in her daily life and are interfering with her ability to participate successfully in society." (Id.)

The ALJ gave these opinions "little weight for multiple reasons." (AT 27.) First, the ALJ determined that these opinions, like Dr. Lawson's opinion, were inconsistent with statements from plaintiff's various therapists that she was stable when sober, and statements from plaintiff

10

| | |
|---|---|
| 1 | that she had responded to care and was doing well.  (Id.)  As explained, these conclusions are |
| 2 | supported by substantial evidence in the record.  (See AT 294, 302, 305, 327, 344, 432, 542, 750, |
| 3 | 906.) |

Second, the ALJ noted that the opinions of Mr. Nascimento and Ms. Wilson were not supported by objective findings.  (AT 27.)  This is also supported by the record.  As the ALJ observed, Mr. Nascimento's opinions include reference to plaintiff's subjective complaints and her medical history, but do not include any objective mental status examinations that he personally observed during the course of therapy.  (See AT 453, 461, 470, 607, 614.)  Likewise, Ms. Wilson's opinion merely lists plaintiff's subjective complaints, without any reference to any objective findings.  (See AT 422.)

Third, the ALJ observed that neither of these practitioners "noted the claimant's ongoing history of a substance disorder and it appears that given the short period she was treated by M[r]. Nascimento or Ms. Wilson, that neither of these providers were aware of her substance abuse." (AT 27.)  This observation is also supported by the record, as there is no evidence to suggest that either practitioner were aware of plaintiff's otherwise well-documented substance abuse.

        3.    *Opinions of Randall Garland, Ph.D and L. Colksy, MD*.

On May 8, 2013, after reviewing plaintiff's file, State agency psychologist Randall Garland, Ph.D. opined that plaintiff

> should be able to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis, including the abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, coworkers and work situations; & deal with changes in a routine work setting.

(AT 74.)  Subsequently, on November 4, 2013, State agency psychiatrist, L. Colsky, M.D. reviewed the file and concurred with Dr. Garland's opinion.  (See AT 101.)  The ALJ gave these opinions great weight because she determined that "they are consistent with the discussed treatment evidence that shows that the claimant's condition is well controlled when she is sober and medication compliant."  (AT 26.)  As explained above, this conclusion is based upon an accurate characterization of the medical record.

11

Therefore, the ALJ appropriately weighed the medical evidence and provided several specific and legitimate reasons for rejecting and adopting the various medical opinions in the record.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated:  January 23, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.olson.16-1987.order MSJ